```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| FRANK KORINKO            Plaintiff,  v.  WELLS FARGO HOME MORTGAGE, INC.            Defendant. | No. 18-cv-12632-MLW |

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

CABELL, U.S.M.J.

Plaintiff Frank Korinko (Korinko) contends that defendant Wells Fargo Home Mortgage, Inc. (Wells Fargo) incorrectly reported mortgage payments he was making as coming from his stepdaughter. He asserts claims for breach of contract, violation of the Fair Credit Reporting Act (FCRA) and violation of the Real Estate Settlement Procedures Act (RESPA). Wells Fargo moves to dismiss. (D. 14). For the reasons explained below I recommend that the motion to dismiss be granted.

### I.    RELEVANT FACTUAL BACKGROUND

The facts as alleged in the First Amended Complaint (FAC) are taken as true for purposes of the motion to dismiss.

In 2006 Korinko and Tammy Hebert ("Hebert"), his stepdaughter, purchased a home in West Yarmouth, MA, through a

mortgage with Fremont Investment and Loan listing Mortgage Electronic Registration Systems (MERS) as mortgagee. (FAC ¶ 10, 11.) The plaintiff and Hebert were both listed as mortgagors. (Id. ¶ 11).

Hebert moved out the following year. In 2010 a quitclaim deed was executed to remove her from the title to the home. (Id. ¶ 16, 20).

At some point in 2012, Korinko was contacted by the Massachusetts Attorney General's office and joined a class action lawsuit the state had brought against various loan providers, including Wells Fargo. (Id. ¶ 22). The lawsuit was eventually settled and Korinko as part of the settlement became entitled to a partial loan forgiveness of $209,000. (Id. ¶ 27).

In or around 2013 and following a three-month trial payment plan that began in November 2012, Wells Fargo agreed to modify the loan to reduce Korinko's interest rate.[1] (Id. ¶ 23). Korinko signed the loan modification agreement alone, without Hebert. Wells Fargo's attorney made sure that Wells Fargo had a copy of the quitclaim deed and indicated that Hebert had been removed from the deed before the modification papers were

---

[1] The FAC does not assert that the purpose of the loan modification was to reduce the interest rate but the parties agreed at the hearing that that was its purpose. Also, it is not clear whether Korinko alleges that the loan modification came about because of the class action settlement or because of unrelated negotiations to reduce his interest rate. In that regard, Korinko does note elsewhere in the FAC that he previously had been struggling to make his monthly payments. (FAC ¶ 23, 27). The plaintiff's motivation for pursuing a loan modification is not material to the defendant's motion.

finalized. (Id. ¶ 24, 25). Korinko continued thereafter to make all monthly payments. (Id. ¶ 31).

The $209,000 partial loan forgiveness was considered a "taxable event". As such, the Massachusetts Department of Revenue (DOR) in 2016 imposed taxes in the amount of $16,000. The DOR sent the bill to Hebert rather than to the plaintiff, however, notwithstanding the fact that Hebert's name was no longer on the title to the property and all the mortgage payments had been made by the plaintiff. (Id. ¶ 29). After Hebert appealed and negotiated the amount downward, Korinko paid the tax bill. (Id. ¶ 30).

In February 2017 a Wells Fargo representative confirmed that Wells Fargo had never removed Hebert's name from the loan documents. The representative stated that Wells Fargo intended to update all its reports to credit reporting agencies going back to 2010, because this was Wells Fargo's mistake. (Id. ¶ 36). Wells Fargo failed to do so, however. (Id. ¶ 40).

In 2018 the plaintiff through his attorney sent a written inquiry requesting information from Wells Fargo about why they had not removed Hebert from the loan. The plaintiff also requested a copy of the loan history. (Id. ¶ 41). The defendant replied that Korinko would have to assume the entire loan if he wanted to have Hebert removed from the loan, and

3

failed to provide the plaintiff with a copy of the loan history. (Id. ¶ 41, 54).

## II. LEGAL STANDARD

To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

When deciding a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). However, the Court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the Court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

### III. Discussion

*Count I: Breach of Contract*

Count I alleges that Wells Fargo breached a contract to remove Hebert from the mortgage. To state a claim for breach of contract under Massachusetts law the plaintiff must show "(1) that the parties reached a valid and binding agreement...(2) that [the] defendant breached the terms of this agreement, and (3) that [the] plaintiff suffered damages from the breach." *Linton v. New York Life Ins. and Annuity Corp.*, 392 F. Supp. 2d 39, 41 (D. Mass. 2005) (quoting *Michelson v. Digital Financial Services*, 167 F.3d 715, 720 (1st Cir. 1999)).

The plaintiff clarified at the hearing that the contract at issue is the loan modification agreement. Neither party provided the court with a copy of the agreement but both agreed that it does not contain a provision requiring Wells Fargo to remove Hebert from the loan. The plaintiff argues that the modification agreement nonetheless necessarily contemplated that Hebert would be removed from the mortgage because (1) Wells Fargo allowed the plaintiff to sign the agreement alone, and (2) various individuals from Wells Fargo told the plaintiff that

5

Hebert would be "taken off" the mortgage.  (FAC ¶ 19, 33, 36, 38).  As such, so the plaintiff argues, Wells Fargo breached the loan modification agreement when it thereafter failed to remove Hebert from the mortgage.

Wells Fargo argues that this argument fails *ab initio* because the original mortgage explicitly states that a borrower (such as Hebert) "shall not be released...unless [the] Lender agrees to such release in writing."  (D. 15, Ex. A, ¶ 13).  Wells Fargo argues that because the loan modification derives from the mortgage, the terms of the mortgage control, and a subsequent oral agreement to release Hebert from the mortgage would therefore not be enforceable where the mortgage required any such provisions to be in writing.[2]

As a threshold matter, the defendant is not entirely correct.  Parties in Massachusetts may in fact orally modify a written contract even where the contract contains language requiring that amendments or modifications be in writing, but the evidence of a subsequent oral modification must be "of

---

[2] Counsel for Wells Fargo was unable to explain exactly why Wells Fargo permitted the plaintiff to sign the modification alone if Hebert was still viewed as a co-borrower.  As noted previously, it is not clear whether the loan modification was related or unrelated to the class action settlement and the plaintiff's partial loan forgiveness.  Counsel for Wells Fargo offered that Hebert had apparently declared bankruptcy at some prior point and suggested without quite arguing that her bankruptcy might have played some role in the decision to allow the plaintiff to sign the modification alone.  It is not necessary to definitively answer this question where neither party challenges the validity of the written loan modification agreement and the court concludes *infra* that any oral agreement to remove Hebert from the mortgage would be unenforceable.

6

sufficient force to overcome the presumption that the integrated and complete agreement, which requires written consent to modification, expresses the intent of the parties." *Wagner and Wagner Auto Sales, Inc. v. Land Rover N. Am., Inc.*, 547 F.3d 38, 46 (1st Cir. 2008); *see also Cambridgeport Savs. Bank v. Boersner*, 413 Mass. 432, 439 (1992) ("[A] provision that an agreement may not be amended orally but only by a written instrument does not necessarily bar oral modification of the contract.").

However, where, as here, the contract at issue concerns an interest in real estate, the Massachusetts Statute of Frauds controls and requires that an agreement be in writing to be enforceable:

> No action shall be brought ... [u]pon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them ... [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

M.G.L. c. 259, § 1.  "[A] contract affecting a mortgage falls squarely within the Statute." *French v. Chase Bank, N.A.*, No. 10-cv-11330-RGS, 2012 WL 273724, at *2 (D. Mass. Jan. 31, 2012). Therefore, as a general matter, "a contract for the sale of land must comply with the Statute of Frauds, and an oral modification will not be enforced if it results in a 'rewriting' of the contract or significantly changes the parties' obligations."

*Akar v. Fed. Nat. Mortg. Ass'n*, 845 F. Supp. 2d 381, 397 (D. Mass. 2012) (quoting *Mack v. Wells Fargo Bank, N.A.*, No. WOCV201002228, 2011 WL 4837261, at *6 (Mass. Super. Aug. 31, 2011)).

As it relates specifically to oral agreements to remove a borrower from a mortgage, courts that have considered the issue have uniformly concluded that such provisions are unenforceable under the Statute of Frauds.  *See Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 452 (D. Mass. 2016) ("Because Capital One's alleged oral agreement to grant Hosseini a partial release of his mortgage was not in writing, it is unenforceable under the Statute of Frauds."); *accord Duff v. U.S. Trust Co.,* 327 Mass. 17, 20 (1951) (oral agreement by bank for partial releases of mortgages fell within the Statute of Frauds and was therefore unenforceable); *Metro. Credit Union v. Matthes*, 46 Mass. App. Ct. 326, 334 (1999) (same); *Cohoon v. Citizens Bank*, No. CV002774, 2000 WL 33170737, at *2 (Mass. Super. Nov. 11, 2000) (concluding that it is "settled ... that both a mortgage and a release from a mortgage obligation must be in writing"); *see also FirstMerit Bank, N.A. v. Inks,* 138 Ohio St. 3d 384 (2014) (statute of frauds prohibited guarantors from raising alleged oral release agreement as defense); *Casey v. Travelers Ins. Co.,* 585 So. 2d 1361 (Ala. 1991) (oral agreements for partial release of lands from mortgages were agreements for transfer of real

property and void under statute of frauds); *Yoost v. Zalcberg*, 925 N.E.2d 763 (Ind. App. 2010) (alleged oral promise to release the mortgage barred by the statute of frauds).

This court finds the precedent cited above to be compelling and will follow it here.  Accordingly, even assuming the parties orally agreed that Hebert would be removed from the mortgage -an assertion Wells Fargo disputes- the agreement would be unenforceable under the Statute of Frauds where it was not in writing.  Count I thus fails to state a viable claim for breach of contract.[3]

*Count II: Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681*

Count II alleges that Wells Fargo violated the FCRA because it incorrectly reported to credit reporting agencies that loan payments made following the loan modification were made by Hebert when they were in fact made by the plaintiff.  Section 1681s-2(a)(1) of the FCRA provides that furnishers of information relating to a consumer's credit may not provide inaccurate information to consumer reporting agencies.  Section

---

[3] In light of the foregoing, it is not necessary to consider whether Count I also fails for failure to assert damages that are recoverable for a breach of contract.  The plaintiff avers that he incurred damages in the form of (i) attorney's fees, (ii) time lost from work, and (iii) interest and penalties on Massachusetts taxes.  But under the well-established "American Rule", attorney's fees are not recoverable in a breach of contract case absent a statute or court rule. *K.G.M. Custom Homes, Inc. v. Prosky*, 468 Mass. 247, 258 (2014).  The plaintiff also does not explain how the defendant's failure to release Hebert from the mortgage caused him to miss work, or what tax-related interest and penalties were imposed that would not have otherwise been imposed had Hebert been removed from the mortgage.

9

1681s-2(b) further imposes specific duties on furnishers in the event they receive notice of a dispute over the accuracy of information they have provided. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010).

The complaint does not specify which provision the plaintiff contends Wells Fargo violated but Congress has expressly prohibited private suits against furnishers for violations of subsection 2(a)(1) so the plaintiff must be asserting a violation of subsection 2(b). *Chiang,* 595 F.3d at 35. Section 1681s-2(b)(1) provides in relevant part that:

> [a]fter receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the [information furnisher] shall—
> A) conduct an investigation with respect to the disputed information [and]
> B) review all relevant information provided by the consumer reporting agency... .

Wells Fargo contends that the plaintiff may not bring a FCRA claim against it, regardless of whether Wells Fargo was reporting inaccurate information, "because the FCRA does not provide for a private right of action against a 'furnisher' like Wells Fargo for inaccurate reporting." This statement is not correct. A plaintiff may indeed bring an action against a furnisher under subsection 2(b)(1), provided that he can show that the credit reporting agency had notice of an inaccuracy in the credit report and in turn notified the furnisher of the

same, thereby triggering the furnisher's duty to investigate. *See e.g., Catanzaro v. Experian Information Solutions*, *Inc*., 671 F. Supp. 2d 256, 259 (D. Mass. 2009) ("notification by a consumer reporting agency to the furnisher is a prerequisite under § 1681s-2(b)(1)"); *Gibbs v. SLM Corporation,* 336 F. Supp. 2d 1, 11 (D. Mass. 2004) (the FCRA "provides a private cause of action only if the furnisher received notice from a consumer reporting agency"). A consumer's act of directly notifying the furnisher of inaccurate reporting does not trigger the furnisher's duties under § 1681s-2(b). *Chiang*, 595 F.3d at 35 n.8.

The complaint here fails to allege sufficient facts to make out a violation of section 2(b)(1). It does not allege that Korinko ever attempted to lodge a dispute with any credit reporting agency before filing his federal complaint, or that any credit reporting agency ever notified Wells Fargo of a dispute. Accordingly, Count II should be dismissed for failure to state a claim. *See e.g., Catanzaro*, 671 F. Supp. 2d at 260 (failure to allege that credit reporting agency knew of potentially inaccurate information or notified furnisher of the same warranted dismissal of complaint). However, the dismissal should be without prejudice to the plaintiff's right to seek leave to amend the complaint to incorporate allegations of

notice by the consumer reporting agencies to Wells Fargo, if he can make such a claim.

### Count III: Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(e)[4]

Count III alleges that Wells Fargo violated RESPA.  RESPA allows borrowers to send their loan servicer a qualified written request (QWR) for specific information relating to the servicing of their mortgage and imposes on servicers specific duties in responding to the request.  12 U.S.C. § 2605(e).  The plaintiff contends here that he sent Wells Fargo correspondence (1) requesting an explanation as to why Hebert was not removed from the mortgage as part of the loan modification process, and (2) asking for a copy of the entire loan history, but received an inadequate response to the first request and no information in response to the second.[5]  Under RESPA, if a servicer fails to respond properly to a QWR, a mortgagor may bring a suit for any "actual damages to the borrower as a *result* of the failure."  12 U.S.C. § 2605(f)(1)(A) (emphasis added).

The parties appear to presume that the plaintiff's written request constituted a QWR but the mere fact that a borrower

---

[4] Korinko refers to Count III as alleging a violation of "the federal Servicer Act" rather than RESPA but they are the same thing here where the Servicer Act, found at 12 USC § 2605, is one of several provisions comprising the Real Estate Settlement Procedures Act of 1974 (RESPA).

[5] Neither party provided the court with a copy of the plaintiff's written request or the defendant's response.

sends his lender a letter complaining or asking about something does not make that letter a QWR. Under RESPA, a QWR must, among other things, relate to the "servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A). "Servicing" under RESPA means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

With respect to the plaintiff's request for an explanation as to why Hebert was still being listed as a co-borrower in light of the loan modification, the court finds that this portion of the request did not constitute a QWR because the request related to the terms of the loan modification rather than the actual servicing of the loan. Courts have held that loan modification concerns are not a proper subject matter for a QWR and that a letter challenging the validity of a loan or its modification therefore does not constitute a valid QWR. *See e.g., Gates v. Wachovia Mortg. FSB,* No. 09-02464-FCD-EFB, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010); *see also O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 36 (D. Mass. 2014) (noting that to be a QWR, a letter from a borrower must relate to servicing, which "ensures that the statutory duty does not arise with respect to all inquiries or complaints"); *Medrano v.*

13

*Flagstar Bank*, FSB, 704 F.3d 661, 667 (9th Cir. 2012) (concluding that letter challenging "the terms of the loan and mortgage documents, premised on an assertion that the existing documents [did] not accurately reflect the true agreement" and "request[ing] modification of those documents" did not relate to servicing loan and thus servicer's obligations under RESPA was not triggered).

Moreover, and regardless, Wells Fargo actually responded to this request where it clarified that Wells Fargo still viewed Hebert as a co-borrower. The answer was admittedly not overly fulsome, and it clearly did not please the plaintiff, who believed that Hebert was to have been removed from the mortgage at the time of the modification, but the plaintiff's lack of satisfaction is irrelevant for these purposes where Wells Fargo did respond and did explain why it believed the plaintiff's loan account was correct. *See e.g., Bates v. JPMorgan Chase Bank, N.A.*, 768 F.3d 1126, 1133 (11th Cir. 2014) (finding that servicer's response to QWR was sufficient under § 2605(e)(2)(B) where servicer provided reasons that the servicer believed the account was correct, regardless of whether borrower "was confused and/or unsatisfied with this answer").

With respect to the second portion and the plaintiff's request for a copy of the entire loan history, the court finds that this request did constitute a QWR where it relates by its

14

very terms to the history of the servicing of the loan. *Kassner v. Chase Home Fin., LLC*, No. 11-10643-RWZ, 2012 WL 260392, at *6 (D. Mass. Jan. 27, 2012). That being said, the plaintiff cannot show a RESPA violation for Wells Fargo's failure to respond because the complaint fails to plead facts showing that the plaintiff suffered actual damages as a result of the defendant's failure to provide him with a copy of the loan history. *See* 12 U.S.C. § 2695(f)(1)(A) (noting that recovery is limited to "actual damages to the borrower as a result of the failure").

The plaintiff avers that he has suffered damages in the form of "attorney fees incurred in trying to resolve the problem without litigation," "time lost from work," and "insufficient information to understand how Wells is servicing the loan." In the court's view, however, these allegations cannot satisfy the plaintiff's pleading burden where the complaint: (1) underscores in explicit terms that the principal reason the plaintiff requested information from Wells Fargo was not to get a copy of the loan history but rather to collect "information concerning the modification and [Korinko's] efforts to get [Hebert's] name off the mortgage loan"; (2) does not ever allege that Wells Fargo made any loan-related miscalculations or mistakes in servicing the loan; and (3) does not allege that the plaintiff actually suffered a true consequence specifically as result of not receiving a copy of the loan history.

As such, while Count III does allege that the defendant failed under RESPA to provide the plaintiff with a copy of the loan history, the claim ultimately fails because it does not allege sufficient facts to show that this failure actually caused the plaintiff to suffer damages.  The claim should therefore be dismissed, but without prejudice to the plaintiff's right to seek leave to amend if he believes this case presents sufficient facts to support a claim for actual damages.

## IV. Conclusion

For the foregoing reasons, I recommend that Wells Fargo's Motion to Dismiss (D. 14) be GRANTED.[6]  As noted above, the dismissal regarding Counts II and III should be without prejudice subject to the plaintiff's ability to seek leave to amend, provided there is a factual basis to do so.

---

[6] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:   February 14, 2020